UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
2005 MAR 21 P 4:32

LAWRENCE WARREN,

    Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 04-71589

HON. JOHN CORBETT O'MEARA
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Lawrence Warren brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 (Tr. 41-43). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

On December 3, 2001, Plaintiff filed an application for Disability Insurance

Benefits (DIB) alleging an onset of disability date of August 22, 2001 (Tr. 41-43). After denial of his initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on September 12, 2003 in Flint, Michigan before Administrative Law Judge (ALJ) G. Roderic Anderson. Plaintiff, represented by attorney William Watkinson, Jr., testified. (Tr. 197-214). Mary Williams, acting as Vocational Expert (VE) also testified (Tr. 230-254A). ALJ Anderson found that although Plaintiff was unable to perform any of his past work, he retained the capacity to perform a significant number of jobs in the national economy (Tr. 20). On March 16, 2004 the Appeals Council denied review (Tr. 5-8). Plaintiff filed for judicial review of the final decision on April 27, 2004.

## BACKGROUND FACTS

Plaintiff, born June 13, 1952 was age fifty-one when the ALJ issued his decision (Tr. 41).[1] A high school graduate, Plaintiff previously worked as a forklift driver and auto production floater (Tr. 80, 231). Plaintiff alleges an onset date of August 22, 2001 when he suffered a heart attack at work (Tr. 15, 232). During the course of Plaintiff's hospitalization, he further suffered a stroke (Tr. 235).

A.   **Plaintiff's Testimony**

On September 12, 2003, Plaintiff testified before ALJ Anderson that he last

---

[1] ALJ Anderson's findings incorrectly state Plaintiff's age as 50 at the time of hearing (Tr. 15).

worked on August 22, 2001 when he experienced a heart attack at work (Tr. 234). He reported that several days after his hospital admittance, he underwent angioplasty and that during the course of his hospital recovery, he suffered a stroke (Tr. 235). Plaintiff reported that he experienced paralysis on his left side "from the top of [his] head to the bottom of his foot," stating that he still experienced facial numbness. In addition to numbness, Plaintiff reported that he had trouble picking up a coin, buttoning his shirt, tying his shoes, and bathing (Tr 236, 254). He also reported left leg weakness, stating that he avoided putting weight on his leg (Tr. 240).

Plaintiff testified that he had undergone rehabilitation for three months following his hospitalization (Tr. 239). He reported severe pain at the time of his rehabilitation, but indicated that over time, he had adjusted to his physical limitations (Tr. 240). He estimated that he could stand for twenty minutes without discomfort and walk for five to six short blocks before experiencing a need to rest (Tr. 241-242). He reported that he could not lift an object weighing approximately as much as a gallon of milk for more than a brief period (Tr. 243).

Plaintiff reported that he drove regularly, but exercised caution when driving in adverse conditions (Tr. 243-244). He stated that he visited friends at a social club or work on a regular basis; performed light housekeeping and gardening; and handled his own finances (Tr. 243, 253, 254). He indicated that sitting with his feet elevated temporarily relieved discomfort from stroke complications, stating that he spent

several hours on most days in a reclining chair (Tr. 245).

Plaintiff confirmed that he treated with a psychologist regularly, due to the stress that he experienced as a result of his illness (Tr. 246-247). He expressed sadness at his present inability to fish, dance, and "play with [his] kids" (Tr. 247). Plaintiff testified that he received a permanent and total disability pension of $2,700 a month (Tr. 232).

### B. Medical Evidence

On August 22, 2001, Plaintiff sought emergency treatment for symptoms of a heart attack (Tr. 90). During his subsequent hospitalization, after submitting to an apparently successful angioplasty, Plaintiff suffered a stroke[2] (Tr. 88, 135). Plaintiff exhibited slurred speech, facial paralysis, and left arm and hand weakness (Tr. 88). Plaintiff received physical, occupational, and speech therapy prior to his discharge on September 4, 2001 (Tr. 135).

On September 10, 2001, Mark G. Plucer, D.O. evaluated Plaintiff for physical therapy (Tr. 155). Plaintiff reported difficulty ascending and descending steps, but demonstrated the ability to walk without an assistive device (Tr. 156). Dr. Plucer prescribed physical therapy three times a week for at least two weeks, observing

---

[2]Plaintiff's hospital records and testimony indicate that he suffered "left hemiparesis" (Tr. 135, 235). Transcript page 135, which confirms left side paralysis also states incorrectly under the heading "Final Diagnosis" that Plaintiff experienced right side paralysis.

"weakness in the lower left extremity," and impaired coordination (Tr. 157). A November 9, 2001 discharge summary indicates that Plaintiff "met all long term goals," but indicated to staff that he still experienced left leg weakness (Tr. 159).

Plaintiff also began occupational therapy in September, 2001 (Tr. 167). Therapists noted no active movement of his left thumb or index finger, and only trace movement in his middle, ring, and little left fingers (Tr. 169). Plaintiff also exhibited slurred speech and a slumped position (Tr. 167, 169). He expressed a desire to resume work and his regular activities (Tr. 167). Plaintiff's discharge report from occupational therapy, dated November 23, 2001, indicates that although Plaintiff could tie his shoes with both hands and performed his own cleaning and laundry tasks, he continued to suffer from numbness and tingling in his left arm and fingers (Tr. 161). The report indicated that Plaintiff could not button his right shirt sleeve or knot a tie (Tr. 161).

In February, 2002, Dr. Pulcer completed a statement on behalf of Plaintiff for insurance purposes, indicating Plaintiff's reaction to therapy following his heart attack and stroke was "fair," but opining that Plaintiff would never be capable of gainful employment (Tr. 186). Dr. Pulcer modified his assessment in a April 16, 2002 statement, indicating that Plaintiff "cannot do any work for which his/her skills or

special training would qualify him."[3] (Tr. 187).

On September 25, 2001, cardiologist Richard W. Hennig, Jr. D.O., examined Plaintiff recommending that he undergo a November, 2001 Cardiolite test, but observed that he looked "tremendous," finding "no cardiac contraindication for him to drive." (Tr. 150). Plaintiff's November, 2001 Cardiolite test showed no symptoms of angina (Tr. 185). An EKG showed negative results for ischemia (Tr. 186). In November, 2002, Dr. Henning indicated that Plaintiff exhibited "good hand strength and gripping." (Tr. 197). Plaintiff denied symptoms of angina. Dr. Henning cautioned that Plaintiff could take Viagra as long he did not ingest nitrate medication within twenty-four hours of Viagra usage (Tr. 198). Dr. Henning's report indicated that Plaintiff took Niaspan, Vasotec, Lipitor, Atenolol, one aspirin a day, and fish oil (Tr. 197).

In February, 2003, Plaintiff underwent mental health treatment for depression, reporting despondency at his physical limitations following his stroke (Tr. 221). Notes from an April exam indicate that Plaintiff experienced improvement after taking Zoloft and Ambien (Tr. 220). An August, 2003 entry indicates that Plaintiff was less depressed than when he started his treatment, but still sad (Tr. 212).

---

[3]Dr. Pulcer declined to check the box which stated that Plaintiff was incapable of *any* work (Tr. 187).

### C. Vocational Expert Testimony

VE Mary Williams, indicating that her testimony was consistent with the Dictionary of Occupational Titles definition of jobs, stated that Plaintiff was unable to perform his past relevant jobs (both unskilled, requiring a medium level of exertion) as a forklift driver and an autoproduction floater, due to his inability to stand for long periods of time or lift more than a gallon of milk (Tr. 80, 255, 257-258).

The ALJ then posed the following question to the VE:

> "Now let's take a hypothetical worker of Mr. Warren's same age of 49 years at onset, with a high school education, able to do unskilled work at light level lifting with the right, and no more than 20 pounds with the left, and no more than ten pounds, no prolonged walking, standing, with a sit/stand option, no repetitive pushing or pulling, no climbing of stairs or ladders, limited use of the left extremities – upper left extremity, limited handling, fingering, and feeling with the left, no use of air or vibrating tools, no operation of machinery or motor vehicles, working around moving machinery or unprotected heights, controlled environment free of dust, smoke, and fumes, and no temperature extremes hot and cold . . . .and be able to perform only simple tasks requiring one, two, or three steps. Would there be work in the national or regional economy this worker would be able to perform?"

The VE answered that given the above limitations, such an individual could perform the work of an inspector (6,000 jobs), cashier, (20,000 jobs), and self-serve gas station attendant (3,200 jobs), stating that she limited the geographic scope of her determination to Michigan's lower peninsula (Tr. 257). The VE indicated that if the hypothetical included limitations indicating a need to recline, rest, or nap frequently,

along with the need to keep his feet elevated, such an individual would be unable to perform any work in the national or regional economy (Tr. 257).

**D.    The ALJ's Decision**

Based on Plaintiff's December 3, 2001 application, ALJ Anderson held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 20). Citing Plaintiff's medical records, the ALJ found that Plaintiff suffered from "severe coronary artery disease, cerebral vascular accident and a depressive disorder " (Tr. 19). The ALJ held that Plaintiff's impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521, but found nonetheless that they did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4 (Tr. 19).

The ALJ found that while Plaintiff was unable to perform his past work, he retained the residual functional capacity (RFC) to perform the exertional and non-exertional requirements of work except for:

> lifting more than twenty pounds or frequently lifting and carrying more than ten pounds; sit/stand option; no prolonged walking or standing; no repetitive pushing or pulling; no climbing of stairs; no use of ladders; limited use of the left upper extremity; limited fine motor dexterity of the left hand; no use of air or vibrating tools; no operation of machinery/motor vehicles; no working around moving machinery; no unprotected heights; controlled environment free of dust, smoke/fumes; no temperature extremes of hot or cold and no requirement to perform more than simple tasks requiring only a 1, 2, 3-step process (Tr. 18-19).

He concluded although Plaintiff's "exertional limitations do not allow him to

perform the full range of light work," Plaintiff could perform a significant number of jobs in the national economy, citing work as an inspector, cashier, and self-serve gas station attendant, finding the occurrence of approximately 29,200 of such jobs in the regional economy (Tr. 20).

The ALJ found Plaintiff's allegations of limitations "not fully credible" (Tr. 18). The ALJ found that "[w]hile no doubt [Plaintiff] experiences some pain or limitations because of his impairments, the extent, duration and frequency reported is not supported by the evidence of record " (Tr. 18). The ALJ noted Plaintiff continued to visit with friends, shopped, attended his own personal needs and finances, and drove on a daily basis (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without

interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional

capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[4]

### A. Treating Physician

Plaintiff argues that the ALJ erred in failing to adopt his treating physician's February, 2002 assessment that he was incapable of work. *Plaintiff's Brief* at 9 *referencing* (Tr. 186). Plaintiff quotes *Hardaway v. Secretary of HHS*, 823 Fed 2d 922, 927 (6th Cir. 1987) in support of the proposition that the Commissioner is bound by a treating source opinion when it is supported by "clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Plaintiff's Brief* at 9.

Generally, "[i]n determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time . . . are given greater weight than . . . physicians employed and paid by the government . . ." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); 20 C.F.R. §404.1527(d) (evaluating evidence from treating sources). *See Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) ("[I]t is well-settled in this

---

[4]This Court shall deem waived any issue not directly raised by Plaintiff. See *Young v. Secretary of Health & Human Services*, 925 Fed. 2d 146 (6th Cir. 1990). While arguing that the ALJ should have found him capable of sedentary work only, he does not contend that his mental health record and the ALJ's findings prevent him from performing substantial gainful employment.

circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference" ).

However, the deference accorded the treating physician is only appropriate when the examining physician's report is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).

This Court agrees that the opinion of Dr. Pulcer, apparently one of Plaintiff's treating physicians, should be accorded considerable weight in deference to his long-standing professional relationship with Plaintiff. However, as noted by Defendant, Dr. Pulcer's February, 2002 statement that Plaintiff could "never" work again, is contradicted by substantial evidence (Tr. 186).

First and most importantly, Dr. Pulcer's statement that Plaintiff could "never" return to work must be analyzed within its proper context. The heading of the form completed by Dr. Pulcer declaring Plaintiff's disability read "Statement of Employee's Physician," indicating that the form question posed and answered by Dr. Pulcer pertained to his ability to perform work for his former employer (Tr. 186). A form entitled "Attending Physician's Statement" completed by Dr. Pulcer on April 16, 2002 shows that Dr. Pulcer checked the form statement that Plaintiff "cannot do any work *for which his/her skills or special training would qualify him/her*" rather than

checking the statement above which states that the individual "*cannot do any work, including light sedentary work.*" (Tr. 187). Whether Dr. Pulcer's April, 2002 assessment, which *limits* Plaintiff's work potential, rather than precludes all employment should be read as a statement tempering and clarifying his February statement or, as an overt contradiction of his earlier opinion that Plaintiff's disability is irrelevant. Dr. Pulcer's April, 2002 evaluation, does not conclude that Plaintiff is unable to perform any work and supports the ALJ's conclusion of non-disability.

Further substantial evidence supports ALJ Anderson's findings. Dr. Hennings found in November, 2002 that Plaintiff "now has good hand strength and gripping, and good flexion and extension of his left arm" (Tr. 197). Plaintiff testified at the administrative hearing that he could walk five to six short blocks before needing to rest (Tr. 242). Although Plaintiff's stroke indisputably precluded him from a number of previous activities, he indicated at one point that "as time progresses" his ability to function has improved (Tr. 239). *Hardaway, supra,* 823 F.2d at 927 actually states that a treating physician's opinion, if contradicted by other evidence, must be placed in the context of the claimant's assembled file. ("[T]he determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence"). *See also Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978).

**B.      Light Work**

Plaintiff also argues that the ALJ erred in finding that he could perform light work, maintaining that the ALJ's hypothetical question should have reflected Plaintiff's testimony that he could lift only fifteen pounds. Plaintiff contends that his impairments limit him to sedentary work only, which because of his age, mandate a finding of disability.[5]  *Plaintiff's Brief* at 7.

"Light work," as defined by the Social Security Administration

> "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

*Wackerle v. Commissioner of Social Security* 2004 WL 1765474, 3 (E.D.Mich.2004); 20 C.F.R. § 404.1567(b).

---

[5] 20 CFR § 404.1563 (d) states, "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." A finding that a claimant closely approaching advanced age with skills analogous to Plaintiff's could perform only sedentary work would generally direct a finding of disabled." "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if plaintiff had a residual functional capacity (RFC) for sedentary work, § 201.09, but not if his RFC is light, § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986)

Contrary to Plaintiff's assertions, substantial evidence supports the ALJ's finding that Plaintiff could perform a limited range of light work. First, as discussed in section A, one of Plaintiff's treating physician declined to find him incapable of light or sedentary work (Tr. 187). Another physician stated in a November, 2002 report that Plaintiff had "good hand strength and gripping," as well as "good flexion and extension of his left arm" (Tr. 197). Although Plaintiff claimed at his hearing that he lacked the ability to lift more than fifteen pounds with his unafflicted (right) arm, and eight and a half pounds with the left, objective medical evidence does not support his claim that he could lift only fifteen pounds with his uninjured arm (Tr. 243, 251). Plaintiff's Residual Functional Capacity Assessment, prepared in February, 2002 by Russell Holmes, M.D., indicates that Plaintiff retained the ability to lift fifty pounds occasionally and twenty-five pounds frequently (Tr. 178).[6]

Although Plaintiff urges this Court to give controlling weight to Plaintiff's claimed limitations, the ALJ, noting that Plaintiff's regular activities to some extent refuted his allegations, made an adequate credibility determination. Further, the ALJ is not obliged to include all of allegations of pain and limitation that he finds not credible. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his

---

[6]ALJ Anderson, apparently referring to Dr. Holmes assessment, stated that because his assessment was "without . . . the benefit of new medical evidence," it was not "entitled to significant weight," but would be considered in reviewing the overall record (Tr. 15).

hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir.1987).

In addition, the ALJ, using an RFC which employed limitations supported by substantial evidence, including Plaintiff's left extremity limitations and depression (the ALJ limited Plaintiff to 1, 2, 3-step processes) properly found that Plaintiff could perform a *limited* range of light work. Finding that Plaintiff could not perform an unlimited range of light work did mandate a finding that Plaintiff could perform only sedentary work. *See Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003):

> "Essentially, [the claimant] wants to use the fact that she is not capable of doing all of the jobs in the light work category due to her nonexertional limitation (her left hand impairment) to drop her category level down to sedentary. As a result, she argues that the ALJ should have used Rule 201.09, pertaining to sedentary work, rather than Rule 202.10, pertaining to light work. But that is not how the process works. There is no support for her argument that her nonexertional limitation allows her to decrease the level of her exertional capacity from light to sedentary."

Employing the reasoning of *Wright*, I find that substantial evidence supports the RFC, hypothetical question and VE's testimony which concluded that Plaintiff could perform the work of an inspector, cashier, and self-service gas station attendant.

The overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. In regard to evidentiary support for the ALJ's credibility findings, I note that in the case of a de novo review I might have found

differently. However, the fact that I might draw a different conclusion based on these facts is of no import. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen, supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections,

the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

　　　　　　　　　　　　　　　　　　s/R. Steven Whalen
　　　　　　　　　　　　　　　　　　R. STEVEN WHALEN
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Dated: March 21, 2005

## CERTIFICATION OF SERVICE

I, the undersigned, hereby certify that I have on the 21st day of March, 2005, mailed copies of the attached REPORT AND RECOMMENDATION to the following parties:

LISA WATKINSON, ESQ.
3000 TOWN CENTER
SUITE 1601
SOUTHFIELD, MI 48075

GENEVA S. HALLIDAY
ASSISTANT U.S. ATTORNEY
211 WEST FORT STREET
SUITE 2001
DETROIT, MI 48226

SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE REGIONAL COUNSEL
200 WEST ADAMS
30TH FLOOR
CHICAGO, IL 60606

G/ K. Wilson, Judicial Assistant
Magistrate Judge R. Steven Whalen